# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

_____
|    |
BRUCE RAISLEY,                          :
                                        :
              Petitioner,           :          Civ. No. 13-1134 (RBK)
                                        :
    v.                                 :
                                        :
UNITED STATES OF AMERICA,               :          **OPINION**
                                        :
             Respondent.           :
_____ :

**ROBERT B. KUGLER, U.S.D.J.**

## I.      INTRODUCTION

Petitioner, Bruce Raisley, seeks relief under 28 U.S.C. § 2255 from his federal conviction

and sentence. Petitioner filed his § 2255 motion *pro se*. Petitioner was convicted after a jury

found him guilty of one count of computer fraud in violation of 18 U.S.C. § 1030(a)(5)(A)(i) &

1030(a)(5)(B)(i) in 2010. In 2011, he was sentenced to twenty-four months imprisonment.

Petitioner raises four ineffective assistance of claims in his § 2255 motion; specifically:  (1)

failure to investigate unfounded claim of damages ("Claim I"); (2) failure to issue a subpoena

duces tecum ("Claim II"); (3) failure to obtain evidence that could have been used to request a

dismissal prior to trial for venue issues ("Claim III"); and (4) committing legal error during

opening statements which allowed the government to introduce statements offered by petitioner

during a proffer session with the government ("Claim IV"). For the following reasons, the Court

will deny relief on all of the claims petitioner raises in his § 2255 motion.

## II.     FACTUAL AND PROCEDURAL BACKGROUND[1]

Raisley was once a volunteer for the organization "Perverted Justice." The group uses the internet to seek out sexual predators and expose them to the public. Group members assume fake online personas, pretending to be minors, and then conduct explicit online conversations with adults. Once the adult is identified, Perverted Justice posts the individual's identity and a copy of the text of the online chats on the group's website.

Eventually Raisley began voicing his disapproval of the group's "vigilante" tactics. The group's founder, Xavier Von Erck, responded by using those very tactics against him. Von Erck posed as a woman named "Holly," started an explicit online relationship with Raisley, and convinced Raisley to meet "Holly" one day at the airport. When Raisley arrived, flowers in hand, he was met with photographers. Von Erck posted pictures of the encounter and Raisley's conversations with "Holly" online.

In September 2006 and July 2007, Radar and Rolling Stone magazines published articles about Perverted Justice and its questionable methods, specifically mentioning Raisley and his ordeal with Von Erck. In response to this embarrassing publicity, Raisley took matters into his own hands.

Armed with a background in computer programming, Raisley created a "malware" program and introduced it to the internet where, as intended, it spread to thousands of computers worldwide. Raisley then used this infected network of computers to launch "Distributed Denial of Service" ("DDOS") attacks against websites that published the Radar and Rolling Stone articles. A DDOS attack uses multiple computers simultaneously to request information from a website. If done on a large enough scale, the requests overwhelm the website, take the victim server off line, and render the site inaccessible.

The websites for Rolling Stone, Radar, and the Rick A. Ross Institute of New Jersey ("RRI"), among others, published copies of one or both of the articles about Perverted Justice and Raisley and later experienced DDOS attacks. As a result, the websites became disabled or the content became unavailable due to overwhelming attempts to access the sites.

---

[1] The factual background is taken from the United States Court of Appeals for the Third Circuit's decision on petitioner's direct appeal. *See United States v. Raisley*, 466 F. App'x 125 (3d Cir. 2012).

In November 2007, RRI communicated with the FBI to complain about the DDOS attacks. The FBI investigated and later carried out a search warrant at Raisley's home. During that search, agents seized computers, portable computer storage, and a Rolling Stone magazine containing the article about Raisley, which had been flagged with a post-it note. Raisley told the FBI agents executing the warrant that: (1) "everything [the FBI] needed was on the thumbdrive that [they] had recovered from his home," (2) he had written the code that "was on that thumbdrive," (3) he used the code to "attack" "the rickross.com websites," and (4) "he didn't mean to hurt anybody, he just wanted them to take his name off their sites." Searches of Raisley's computers and the thumbdrive yielded substantial evidence linking him to the DDOS attacks, including the malware program and its source code.

In August 2008, Raisley, accompanied by his attorney, attended a proffer session with the Government. During that session, Raisley admitted that he launched DDOS attacks against rickross.com, but he failed to reach an agreement with the Government.

Raisley was later charged in a Superseding Indictment with one count of computer fraud for damaging the RRI's web servers, in violation of 18 U.S.C. § 1030 & § 2. Raisley moved to suppress the evidence seized from his home, but the District Court denied his motion. A jury found Raisley guilty and the Court sentenced him to 24 months' imprisonment, followed by 3 years of supervised release. He was also ordered to pay $90,386.39 in restitution.

*Raisley*, 466 F. App'x at 126-27.

Petitioner filed a direct appeal with the Third Circuit. In 2012, the Third Circuit affirmed the judgment and conviction. *See id.* at 130. Subsequently, petitioner filed the instant § 2255 motion in this Court. The government filed a response in opposition to the motion. Petitioner did not file a reply in support of his § 2255 motion.

### III.    LEGAL STANDARD FOR § 2255 MOTION

A motion to vacate, set aside or correct a sentence of a person in federal custody pursuant to 28 U.S.C. § 2255 entitles a prisoner to relief if "the court finds ... [t]here has been such a denial or infringement of the constitutional rights of the prisoner as to render judgment

vulnerable to collateral attack." 28 U.S.C. § 2255(b). "In considering a motion to vacate a defendant's sentence, 'the court must accept the truth of the movant's factual allegations unless they are clearly frivolous based on the existing record.'" *United States v. Booth,* 432 F.3d 542, 545 (3d Cir. 2005) (quoting *Gov't of Virgin Islands v. Forte,* 865 F.2d 59, 62 (3d Cir. 1989)) (also citing R. Governing § 2255 Cases R. 4(b)). A District Court "is required to hold an evidentiary hearing 'unless the motion and files and records of the case show conclusively that the movant is not entitled to relief.'" *Id.* (quoting *Forte,* 865 F.2d at 62). The Third Circuit has stated that this standard creates a "'reasonably low threshold for habeas petitioners to meet.'" *Id.* (quoting *United States v. McCoy,* 410 F.3d 124, 134 (3d Cir. 2005) (quoting *Phillips v. Woodford,* 267 F.3d 966, 973 (9th Cir. 2001))). Accordingly, this Court abuses its discretion "if it fails to hold an evidentiary hearing when the files and records of the case are inconclusive as to whether the movant is entitled to relief." *Id.* (citing *McCoy,* 410 F.3d at 134).

## IV.   INEFFECTIVE ASSISTANCE OF COUNSEL STANDARD

Petitioner's claims involve whether counsel was ineffective. The Sixth Amendment guarantees effective assistance of counsel. In *Strickland v. Washington,* 466 U.S. 668 (1984), the Supreme Court articulated the two-prong test for demonstrating when counsel is deemed ineffective. First, the petitioner must show that considering all of the circumstances, counsel's performance fell below an objective standard of reasonableness. *See id.* at 688; *see also Grant v. Lockett,* 709 F.3d 224, 232 (3d Cir. 2013) (noting that it is necessary to analyze an ineffectiveness claim in light of all of the circumstances) (citation omitted). A petitioner must identify the acts or omissions that are alleged not to have been the result of reasonable professional judgment. *See Strickland,* 466 U.S. at 690. Under this first prong of the *Strickland* test, scrutiny of counsel's conduct must be "highly deferential." *See id.* at 689. Indeed, "[c]ounsel

4

is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.* at 690. The reviewing court must make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id.* at 689. If counsel makes "a thorough investigation of law and facts" about his plausible options, the strategic choices he makes accordingly are "virtually unchallengeable." *Gov't of Virgin Islands v. Weatherwax,* 77 F.3d 1425, 1432 (3d Cir. 2006) (citing *Strickland,* 466 U.S. at 690–91). If, on the other hand, counsel pursues a certain strategy after a less than complete investigation, his choices are considered reasonable "to the extent that reasonable professional judgments support the limitations on investigation." *Rolan v. Vaughn,* 445 F.3d 671, 682 (3d Cir. 2006) (citing *Strickland,* 466 U.S. at 690–91).

The second prong of the *Strickland* test requires the petitioner to affirmatively prove prejudice. *See* 466 U.S at 693. Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Id.*; *see also McBridge v. Superintendent, SCI Houtzdale,* 687 F.3d 92, 102 n.11 (3d Cir. 2012). "This does not require that counsel's actions more likely than not altered the outcome, but the difference between *Strickland's* prejudice standard and a more-probable-than-not standard is slight and matters only in the rarest case. The likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter,* 562 U.S. 86, 111–12 (2011) (internal quotation marks and citations omitted).

"With respect to the sequence of the two prongs, the *Strickland* Court held that 'a court need not determine whether counsel's performance was deficient before examining the prejudice

suffered by the defendant as a result of the alleged deficiencies.... If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice ... that course should be followed.'" *Rainey v. Varner,* 603 F.3d 189, 201 (3d Cir. 2010) (quoting *Strickland,* 466 U.S. at 697).

## V.     DISCUSSION

### A.   Claims I & II – Failure to Investigate Damages or Subpoena Evidence of Damages

Petitioner's arguments in Claims I and II are related. In Claim I, he argues that counsel was ineffective in failing to investigate the issue of damages. Indeed, he states that under 18 U.S.C. § 1030(a) a victim must suffer in excess of $5,000 in damages. In Claim II, he asserts that his counsel should have issued a subpoena duces tecum to have a victim, Rick Ross, bring his receipts to trial because they "would have shown less than the required threshold of $5000 to the Rick Ross website providing no crime was committed." (Dkt. No. 1 at p. 5)

At the time petitioner was indicated, the government had to prove losses caused by petitioner's illegal conduct aggregating at least $5,000 in value. *See* 18 U.S.C. § 1030(a)(5)(B)(i). Petitioner argues in Claim I that counsel was ineffective for failing to investigate the damages issue because hosting a website costs only $60-70 per year. Thus, according to petitioner, the loss to a victim in having his website down is only 16.5 cents a day.

Petitioner's argument presupposes that Rick Ross and other websites did not mind having their websites taken down by petitioner's computer attack. However, petitioner's assumption is merely that, an assumption without any support in the record. Indeed, there was ample testimonial evidence produced at trial that showed the damages petitioner's computer attack caused. For example, one victim alone, Rick Ross, testified that the attacks perpetrated by petitioner cost him between $7,000 and $10,000 in cash outlays in response to the attacks. (*See*

Dkt. No. 17-1 at p. 149) Mr. Ross estimated at trial that his loss from the attacks which included

cash outlays and lost revenues was "[m]uch closer to [$]20,000." (*Id.* at 150)

Petitioner fails to show that he was prejudiced by counsel's failure to investigate the issue

of damages further. Indeed, one court has stated as follows with respect to what is needed to

show prejudice in this context:

> [T]o show prejudice, a defendant basing an inadequate assistance
> claim on his or her counsel's failure to investigate must make "a
> comprehensive showing as to what the investigation would have
> produced. The focus of the inquiry must be on what information
> would have been obtained from such an investigation and whether
> such information, assuming admissibility in court, would have
> produce a different result."

*United States v. Askew,* 88 F.3d 1065, 1073 (D.C. Cir. 1996) (quoting *Sullivan v. Fairman,* 819

F.2d 1382, 1392 (7th Cir. 1987)); *see also United States v. Lathrop,* 634 F.3d 931, 939 (7th Cir.

2011) ("[w]hen a petitioner alleges that counsel's failure to investigate resulted in ineffective

assistance, the petitioner has the burden of providing the court with specific information as to

what the investigation would have produced"); *Untied States v. Garvin,* 270 F. App'x 141, 144

(3d Cir. 2008) (failure to investigate claimant must show that but for the inadequate

investigation, there is a reasonable probability exculpatory evidence would have been found

which would undermine confidence in his conviction); *United States v. Green,* 882 F.2d 999,

1002 (5th Cir. 1989) ("A defendant who alleges a failure to investigate on the part of his counsel

must allege with specificity what the investigation would have revealed and how it would have

altered the outcome" of petitioner's case).

In this case, petitioner fails to establish what further investigation on the part of his

counsel would have discovered with respect to the damages issue. As detailed above, Mr. Ross

testified at trial that he suffered damages in excess of $5,000 with respect to the attacks

perpetrated by petitioner. Petitioner has come forward with no evidence to indicate that further investigation by his trial counsel would have negated the evidence on damages produced at trial. Accordingly, petitioner is not entitled to relief on either Claim I or Claim II because he has failed to show prejudice.

B. Claim III – Failure to Investigate Venue

In Claim III, petitioner argues that counsel was ineffective in failing to investigate and obtain documents that would have impeached the testimony of Mr. Ross with respect to the issue of venue. He claims that the website owner for Mr. Ross's website was Zenon Panoussis of Stockholm, Sweden. (*See* Dkt. No. 1 at p. 7) He states that proof of ownership and history of ownership of Mr. Ross's website could have been subpoenaed from the Internet Corporation for Assigned Names and Numbers (ICCAN) to be used to request for a dismissal at trial based on improper venue.

Venue is proper in this District if this is where damages occurred. *See United States v. Auernheimer*, 748 F.3d 525, 533, 537 (3d Cir. 2014). In this case, Mr. Ross testified at trial that he is the founder and Executive Director of the Ross Institute which is an educational non-profit that maintains a very large library and archive that is accessible to the public through the internet. (*See* Dkt. No. 17-1 at p. 146) The Ross Institute is based in Trenton, New Jersey and is a New Jersey corporation. (*See id.*) Accordingly, there was evidence produced at trial that petitioner's attack affected a New Jersey corporation that is based in Trenton, New Jersey such that venue was proper in this District.

Petitioner has come forward with no evidence that further investigation would have revealed that venue was improper in this District. Indeed, he does not show that had counsel sought a subpoena related to the venue issue, it would have shown that venue was improper in

8

this District. Therefore, he has failed to show that he was prejudiced such that he is also not entitled to relief on Claim III.

   C.  <u>Claim IV – Legal Error during Opening Statements</u>

      In Claim IV, petitioner claims that counsel was ineffective during opening statements when he opened the door by allowing the government to introduce petitioner's proffer statements to be admitted during the course of the trial. During his opening statement, petitioner's trial counsel stated that his client "did not attack the Rick Ross website." (Dkt. No. 17-1 at p. 6) This then allowed the government to introduce evidence concerning petitioner's statements at his proffer meeting regarding his attack of the Rick Ross website. (*See* Dkt. No. 17-1 at p. 370, 395, 397). Ultimately, this Court determined that the government could introduce petitioner's statements related to the Rick Ross attack by stating the following:

> You can't have it both ways. You can't have his representative stand before the jury and say I did not attack Rick Ross and tell the FBI at some previous time that in he in fact attack Rick Ross. It doesn't prevent you from explaining to the jury that a not guilty plea mans he has right to a trial and hold the government to its burden. But he can't deny having made that statement to the FBI . . . .
>
> You didn't say that he has right to have the Government prove that he attacked Rick Ross. You affirmatively stated he did not attack Rick Ross. In your statement you state it two different ways and the government has the right I believe under the law and under this agreement with you to now tell the jury that previously he had told the FBI that he made this attack on Rick Ross.

(*Id.* at p. 397) Assuming for purposes of argument only (and without deciding) that counsel's performance during his opening statement fell below an objective standard of reasonableness because it opened the door for his proffer statements to be admitted, petitioner is still not entitled to relief on Claim IV because he has failed to show prejudice.

This was not a weak case against petitioner. Indeed, the facts of this case strongly supported a guilty finding aside from petitioner's proffer statements. By way of example only of the strength of the government's case against petitioner, the FBI conducted two searches during the course of its investigation. The first search was executed at Go Daddy which provides internet related services to its customers. (*See* Dkt. No. 17-1 at p.166) During the FBI's investigation, it learned that the instructions for the malicious software were being downloaded from a domain hosted by Go Daddy with connections to petitioner.  (*See id.* at 167, 174)

A second search warrant was conducted at petitioner's residence in Pennsylvania on March 27, 2008 where the FBI recovered computers, a server, hard drives, thumb drives and documents. During the course of that search, petitioner communicated with the FBI agents. Petitioner told the agents that everything they needed was on the thumb drive that they had recovered from his home. (*See id.* at 176) Furthermore, he told the agents that he used the information on the thumb drive to attack the websites of Perverted-Justice, Corrupted Justice and rickross.com (*See id.*)  A subsequent search of the items seized linked petitioner to the attacks. For example, a source code, which is the recipe of the computer attack was found on petitioner's thumb drive. (*See* Dkt. No. 18-1 at p. 56-59) Indeed, a witness testified that it was his opinion that whomever possesses the source code to the virus was its creator (*See id.* at p. 58) Furthermore, the evidence seized indicated that Rick Ross was a target of the attack. (*See id.* at p. 81) The hard evidence seized as well as petitioner's own statements to investigators prior to his statements at the proffer meeting clearly established that petitioner was the perpetrator of the computer attacks. Accordingly, even if counsel's performance fell below an objective standard of reasonableness during his opening statement by opening the door to petitioner's proffer statements, the outcome of petitioner's trial would not have been different to a reasonable

probability. Petitioner is not entitled to relief on Claim IV based on the strength of the government's case against him even if counsel committed an error by opening the door to his proffer statements during opening statements.

## VI.   CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253(c), unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken from a final order in a proceeding under 28 U.S.C. § 2255. A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller–El v. Cockrell,* 537 U.S. 322, 327 (2003). Applying this standard, the Court finds that a certificate of appealability shall not issue in this case.

## VII.   CONCLUSION

For the foregoing reasons, petitioner's § 2255 motion will be denied. An appropriate order will be entered.


DATED:  March 17, 2016                             s/Robert B. Kugler
                                                   ROBERT B. KUGLER
                                                   United States District Judge

11